## Fiscal Court of Union County v. Young.

(Decided February 5, 1932.)

L. C. FLOURNOY, Jr., for appellant.

H. D. ALLEN, Jr., for appellee.

J. W. CAMMACK, Attorney General, and CLIFFORD E. SMITH, Assistant Attorney General, amici curiae.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN—Reversing.

This is a suit brought by a citizen and taxpayer of Union county to enjoin the issuance by that county of a bond issue of $70,000 to fund warrants and notes heretofore issued by it during the years 1929 and 1930 for the acquisition of rights of way for state highway projects pursuant to a command by the state highway commission that such rights of way be procured by the county for that commission. See Ky. Stats., sec. 4356t-7. From the pleadings herein, it appears that during the years 1929 and 1930, pursuant to the orders of the state highway commission, Union county, by condemnation proceedings or arbitration awards with landowners of Union county, condemned and procured for the state highway department for the purpose of state highway projects certain rights of way through Union county, which the highway department later took possession of, and the county

issued its warrants and notes for the rights of way so procured in the aggregate sum of $71,200, that, at the time these rights of way were so procured for the state highway department, the maximum tax levies which could be levied under the Constitution had been levied by the county for each of these years, and that the ordinary running expenses of the county consumed all of the revenue thus raised, and there were no funds available in the general or any other fund to pay for these rights of way, and that to have paid for them the county would have had to exceed the levies authorized by the State constitution. Not having the money wherewith to pay for these rights of way, the county issued its warrants and notes for them, and, seeing that it would be unable to pay fully these notes and warrants out of its taxes for many years to come, because the ordinary expenses of government would about exhaust whatever could be raised by the maximum tax rate authorized by the State Constitution, the county proposed by a vote of its fiscal court to fund $70,000 of this alleged floating debt. It is the funding of this alleged floating debt which it is sought to enjoin by this action.

Section 4356t-7 of the Statutes by virtue of which it is contended that the debt here sought to be funded was validly created, in substance provides that the state highway department can require the counties to procure the necessary rights of way for state highway projects, failing which the state highway department itself may procure them, requiring the counties to pay for the same. So far as pertinent to this question of payment, the statute provides:

"No portion of the cost of acquiring any necessary land or right of way, except a temporary right of way, nor any part of any damages incurred, awarded or paid, shall be paid out of the state road fund or road and bridge fund, but all cost of acquiring any necessary land or right of way and any damages incurred, awarded or paid shall be paid out by the county out of its general fund or out of funds voted and held by the county or its duly appointed and qualified road commissioners for the purpose of improving or constructing, either or both, the roads and bridges of the county."

It may be said in passing that it is not contended that there were any funds voted and held by Union

county and held by it or its road commissioners for the purpose of improving or constructing the roads and bridges of the county out of which the cost of acquiring these rights of way could have been or can now be paid. The cost of such acquisition in this case under the statute fell on the general fund. But, as hereinbefore pointed out, the general fund of Union county during the period of the acquisition of these rights of way was and still is totally unable to pay such cost, as the ordinary expenses of government then all but exhausted such fund and still does so. We are therefore first confronted with the question whether or not the Legislature intended by the quoted portion of section 4356t-7 of the Statutes to require the counties to procure on command of the state highway department the rights of way for state highway projects and to pay for them out of their general funds when there were no such funds available for that purpose and it would be impossible to increase such general fund or to pay such cost except by a tax levy in excess of that authorized by section 157 of the Constitution. Does this section of the Statutes mean that the state highway department may require a county to acquire rights of way for state highway projects only when there is money in the general funds of that county available for such purpose or such sum can be made available to such general fund by a tax levied within the maximum rates authorized by section 157 of the Constitution, or does it mean that the state highway department may require a county to acquire such rights of way even though there is no money in the general funds of that county available for such purpose and such sum can be made available to such general fund only by a tax levied in excess of the maximum rates authorized by section 157 of the Constitution? If the statute be construed to mean the latter alternative, we are next met with the question whether the Legislature has the right to impose on a county an obligation for road purposes which forces it to exceed in its tax levies the limitations imposed by the Constitution. If the queries so far propounded should be answered in such way as that the conclusion would be that the debt here sought to be funded was not a validly created debt of the county, then the question would arise as to what are the rights of the landowners whose lands have been taken for these rights of way under sections 13 and/or 242 of the Constitution? Did the county or the state,

acting through the highway commission, take these rights of way? Is the county or the state liable for the taking? Is the highway commission liable for the taking despite the provision of section 4356t-7 of the Statutes which says that the funds of the state highway commission cannot be used in the acquisition of permanent rights of way? This statement of the questions necessarily involved in this case makes it quite apparent that the rights and obligations of the landowners, the warrant and note holders, and of the state highway commission are vitally involved in their solution. None of the landowners, the warrant and/or note holders, and the state highway commission was made a party to this suit. Section 28 of the Civil Code of Practice reads:

> "The court may determine any controversy between parties before it, if it can do so without prejudice to others; if it cannot do so, it must require such other persons to be made parties, or must dismiss the action without prejudice."

In the case of Town of Beaver Dam et al. v. Vinson et al., 223 Ky. 490, 3 S. W. (2d) 1090, 1091, a citizen and taxpayer sought to enjoin the collection of a town tax levied to liquidate an indebtedness due for the purchase of fire apparatus. In deciding that the holder of the indebtedness should have been made a party to this suit, we said:

> "And so in the case before us, in granting the injunction sought by the appellees, the court necessarily held either that the creation of the indebtedness incurred when the fire apparatus was bought was invalid, or that the method by which the holder of the indebtedness so incurred was to be paid was unauthorized, or both. In any such event, the rights of such holder were vitally affected, and the court should not have proceeded to judgment until such holder was made a party to the action and given an opportunity to be heard."

And so here. The controversy presented by this record involves the rights and obligations of those above mentioned who are not parties to this case. This controversy should not be determined without them being made parties and given an opportunity to be heard. The judgment is therefore reversed, with instructions to make the

landowners, the warrant and/or note holders, or a representative of such classes, parties to this suit, as well as the state highway commission, and for further proceeding consistent with this opinion. All other questions are expressly reserved.

Whole court sitting.